[Cite as *State v. Velez*, 2015-Ohio-105.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 101303**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JOEL VELEZ**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-577314-A

**BEFORE:** Stewart, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** January 15, 2015

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, OH    44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Scott Zarzycki
           Mary Weston
Assistant County Prosecutors
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, J.:

{¶1}   Defendant-appellant, Joel Velez and his codefendant, Mark Turner, robbed a restaurant and stabbed the owner during the robbery.  The wounded victim knew Velez and identified him as one of the robbers.  When the victim died three months later from complications caused by his wounds, the grand jury charged Velez with counts of aggravated murder, murder, felonious assault, and kidnapping.  In exchange for his cooperation in Turner's prosecution, Velez pleaded guilty to one count of involuntary manslaughter and one count of aggravated robbery.  The court sentenced Velez to ten years on the involuntary manslaughter count and four years on the aggravated robbery count, with the sentences ordered to be served consecutively.  In this appeal, Velez complains that the court erred by failing to find that involuntary manslaughter and aggravated robbery were allied offenses that should have merged for sentencing and that the court failed to make the required factual findings necessary to impose consecutive sentences.

I

{¶2}   Velez first argues that the involuntary manslaughter and aggravated robbery counts should have merged for sentencing because they were offenses that could be, and were, committed by the same conduct as part of a single act.

{¶3}   When a defendant's conduct results in the commission of two or more "allied" offenses of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense.  R.C. 2941.25(A).  Offenses are "allied" and must be merged for sentencing if the defendant's conduct is such that a single act could lead to the commission of separately defined offenses, but those separate offenses were committed with a state of mind to commit only one act.  *See State v. Johnson*, 128 Ohio St.3d 153,

2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48-50; *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 9-10.

**{¶4}** Velez pleaded guilty to involuntary manslaughter under R.C. 2903.04(A). That section states: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." Velez also pleaded guilty to the predicate felony, aggravated robbery, as charged under R.C. 2911.01(A)(3). That section states that no person, while committing or attempting to commit a theft offense, shall "[i]nflict, or attempt to inflict, serious physical harm on another."

**{¶5}** For many years the Supreme Court held that "felony-murder under R.C. 2903.01(B) is not an allied offense of similar import to the underlying felony." *State v. Keene*, 81 Ohio St.3d 646, 669, 693 N.E.2d 246 (1998). *See also State v. Campbell*, 90 Ohio St.3d 320, 347, 738 N.E.2d 1178 (2000); *State v. Logan*, 60 Ohio St.2d 126, 135, 397 N.E.2d 1345 (1979). Felony murder and involuntary manslaughter are very similar crimes — they differ only in respect to the degree of the predicate offense. For this reason, courts likewise considered that involuntary manslaughter and its predicate offense were not allied offenses. *See, e.g.*, *State v. Noble*, 1st Dist. Hamilton No. C-100049, 2010-Ohio-5493.

**{¶6}** The rationale for cases holding that felony murder and its predicate offenses were not allied offenses of similar import rested on a comparison of the statutory elements to find that "[t]he two offenses are not prerequisites, one for the other. To consummate either offense, the other need not by definition be committed." *Logan* at 126. It may have been better to say, as the Supreme Court did in the third paragraph of the syllabus to *State v. Moss*, 69 Ohio St.2d 515, 433 N.E.2d 181 (1982), that a comparison of the elements of two different offenses is unnecessary "where the intent of the General Assembly is manifest": the dispositive issue being

"'whether the General Assembly intended to permit multiple punishments for the offenses at issue.'" *Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, at ¶ 6, quoting *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000).

{¶7} An argument could be made that for purposes of involuntary manslaughter under R.C. 2903.04(B), the General Assembly intended to punish the death proximately caused during the commission of a felony separately from the predicate felony itself. The plain language of the statute suggests as much — with the death having to occur as a proximate result of committing the predicate offense, the offenses are thus committed with the same conduct. To say that the predicate offense is an allied offense of similar import to the death would seem to render a separate charge on the predicate offense meaningless. In *Miranda*, the Supreme Court acknowledged this reasoning by finding a legislative intent to separately punish predicate crimes under Ohio's RICO statute. The Supreme Court recognized that the RICO statute requires an offender to commit a RICO violation (essentially, an offense for having a distinct organizational entity) independent of the conduct required to commit the underlying predicate offenses. *Id*. at ¶ 13. The Supreme Court thus found the RICO statute intended to impose cumulative liability for the criminal enterprise, so the predicate offenses do not merge with a conviction for engaging in a pattern of corrupt activity. *Id*. at ¶ 14.

{¶8} It is unclear whether *Miranda* signals the Supreme Court's intention to apply this line of reasoning. It did not do so in *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, where the Supreme Court held that a count of felony murder, along with its predicate offense of child endangering, were allied offenses of similar import because the state relied upon the same conduct to prove the two offenses — the beating of a child:

> Although there were arguably two separate incidents of abuse, separated by time
> and brief intervention by [the] mother, the state obtained a conviction for the first

sequence of abuse under R.C. 2919.22(B)(3) for administering excessive physical discipline. It was the second sequence of abuse for which the state obtained a conviction under R.C. 2919.22(B)(1) for abuse that caused serious physical harm. And the conviction for the second sequence of events under R.C. 2919.22(B)(1) is the basis for the predicate offense of felony murder under R.C. 2903.02(B). Thus, the two offenses were based upon the same conduct for purposes of R.C. 2941.25. We decline the invitation of the state to parse Johnson's conduct into a blow-by-blow in order to sustain multiple convictions for the second beating. This beating was a discrete act that resulted in the simultaneous commission of allied offenses, child abuse and felony murder.

*Johnson* at ¶ 56.

{¶9} *Johnson* is more closely on point than *Miranda,* 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, because it deals with felony murder, which is more analogous to involuntary manslaughter under R.C. 2903.04(B). The Supreme Court did not mention its prior decisions finding that felony murder and its predicate offenses were not allied offenses of similar import, instead choosing to apply a factual analysis to determine whether it was possible to commit both offenses with the same conduct and, if so, whether the offenses were committed with a single state of mind. Under this test, it might be argued that all cases involving deaths proximately caused during the commission of a predicate felony would, by statutory definition, constitute the same conduct — if the death was proximately caused during the commission of the predicate offense, the two acts were accomplished with the same conduct and state of mind to commit one offense. That conclusion, however, would appear to frustrate the intent to separately punish the death caused during the commission of the predicate offense. However, neither party in this appeal frames the issue of allied offenses in this manner.

{¶10} Although *Johnson* would seemingly control the outcome of Velez's argument, the state maintains that we should apply a line of cases in which the courts have refused to merge aggravated robbery and murder because the force used to effectuate the murder is far in excess of that required to complete the robbery. For example, in *State v. Jackson*, 2d Dist. Montgomery

No. 24430, 2012-Ohio-2335, ¶ 139, Jackson was charged with felony murder and aggravated robbery. The court of appeals held that even though it was "possible" to commit both felony murder and aggravated robbery with the same conduct, "the trial court could have reasonably concluded that Jackson's use of force exceeded that necessary to complete the robbery or that he had a separate intent to kill [the victim]." *Id.* at ¶ 141. The court of appeals found that "the trial court could have reasonably concluded that the intent to kill was separate from the intent to commit robbery." *Id.* *See also State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907 (aggravated murder and aggravated robbery did not merge because degree of force and location of bullet showed a separate intent to kill apart from committing robbery); *State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973.

{¶11} The state argues that the stabbing of the victim in this case was force in excess of what was necessary to effectuate the aggravated robbery; therefore, the offenses are not allied. We agree. The victim in this case was stabbed three times by Velez's codefendant after Velez had deceptively secured their entry into the victim's place of business to rob him. Velez argues that the stabbing of the victim was in response to the victim's refusal of their demand for money and was thus a single act committed with a single state of mind: to rob the store. Not only do we find that the stabbing was an additional act of such excessive force that it went beyond being the same conduct necessary to rob the victim, it was an act of harm that had a separate animus and was unnecessary to the commission of the robbery.

{¶12} We therefore find that Velez's offenses are not allied and the court did not err by refusing to merge them for sentencing.

II

{¶13} In addition to refusing to merge the involuntary manslaughter and aggravated robbery convictions, the court ordered Velez to serve the sentences on those counts consecutively. He argues that the court failed to make the requisite findings under R.C. 2929.14(C)(4) necessary to order consecutive service; in particular, that the court failed to engage in a proportionality analysis comparing the seriousness of his conduct to the need to order consecutive service in light of his cooperation in the prosecution of his codefendant, Turner.

{¶14} R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶15} The court made the required findings. It found consecutive sentences necessary to "protect the public from people who plan crimes." It also found that Velez was in violation of supervision in another case. And contrary to Velez's argument, the court stated that consecutive sentences were "not disproportionate to the conduct of the defendant and the harm to

the community." Tr. 50. In making that finding, the court specifically noted that Velez cooperated in the prosecution of his codefendant, Turner. The court stated:

> I will recognize that — the state recognizes, as I do, that some mitigation in that sentence has to be exercised by the Court for a couple of reasons, but one of them being that you did perhaps under coercion, but you did participate in the trial of Mr. Turner in an effort to I believe minimize your justice in this process. I acknowledge that and I give proper consideration for your assistance in prosecuting Mark Turner.

Tr. 48.

{¶16} The court then found that Velez's cooperation was "well short of absolution." That finding was easily supported by the record — Velez not only knew the victim, but the victim had often showed Velez kindness by giving him money or food. For Velez to rob his benefactor was a complete betrayal, even if Velez did not intend for the victim to be harmed, let alone killed.

{¶17} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

LARRY A. JONES, SR., P.J., and

KATHLEEN ANN KEOUGH, J., CONCUR